

Eastern District of Kentucky
FILED
FEB 08 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-44-GWU

JOHN H. MCCORKLE,                                     PLAINTIFF,

VS:                  <u>MEMORANDUM OPINION</u>

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,         DEFENDANT,

<u>INTRODUCTION</u>

John McCorkle brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income. The case is before the Court on cross-motions for summary judgment.

<u>APPLICABLE LAW</u>

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. <u>See</u> 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of

1

impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(I).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health

2

and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through

3

the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the

4

lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that McCorkle, a 35 year-old former assembler, merchandise stocker, forklift operator and meat cutter with a high school education, suffered from impairments related to a history of a seizure disorder, a polysubstance disorder, an anxiety disorder by history, a substance-induced mood disorder, lumbar disc disease, hepatitis B and C by history, and being status post knee surgery. (Tr. 28, 36). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light and sedentary level work. (Tr. 36-37). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 37). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 35).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the

plaintiff.

The hypothetical question presented to Vocational Expert Jackie Rogers included an exertional limitation to light level work, along with such non-exertional restrictions (1) an inability to lift more than a total of ten pounds; (2) the need for a sit/stand-at-will option; (3) a limitation to low stress, simple repetitive work with no fast-paced assembly lines; (4) a need to avoid all public contact; (5) no more than "moderate" limitation in basic mental work activities; (6) a limitation to work in a stable environment with the same duties, surroundings, and people; (7) a need to avoid exposure to hazards such as moving or dangerous machinery or heights as well as no climbing or balancing; (8) a need to avoid temperature extremes or changes; (9) no driving; and (10) no job duties which would be dangerous to the employee or others. (Tr. 1138). In response, the witness identified a significant number of mainly sedentary level jobs which could still be performed, including machine operator, bench assembler, inspector/checker, and office helper. (Tr. 1139). Therefore, assuming that the vocational factors considered by Rogers fairly depicted McCorkle's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error. Dr. David Hays, a treating physician at the Annville Medical Clinic, recommended that McCorkle should not perform manual labor. (Tr. 628). The ALJ's limitation of the plaintiff to a restricted range of light and sedentary level work would appear compatible with this opinion. Dr. Rita Ratliff, an examining consultant, found no physical restrictions. (Tr. 562). Dr. David Swan, a non-examining Medical Reviewer, indicated only a need to avoid all exposure to hazards which was reflected in the hypothetical question.

6

(Tr. 601-609). To the extent that Dr. James Ross (Tr. 285-294) and Dr. Timothy Greg (Tr. 323-331) suggest the existence of more severe postural limitations than found by the ALJ, their opinions are offset and outweighed. Furthermore, the claimant explicitly concedes that he does not challenge the accuracy of the ALJ's hypothetical question with regard to his physical condition. Memorandum in Support of the Plaintiff's Motion for Summary Judgment at page 5. Therefore, the ALJ dealt properly with McCorkle's physical condition.

The ALJ also dealt properly with the evidence of record relating to McCorkle's mental status. In November of 2001, the plaintiff was hospitalized first at Marymount Medical Center (Tr. 512-523) and then at Appalachian Regional Medical Center (Tr. 524-542, 629-793), following a drug overdose.[1] The claimant was medically stable at the time of his transfer from Marymount to Appalachian. (Tr. 515). Upon discharge from Appalachian, McCorkle was diagnosed as suffering from a substance-induced mood disorder and a polysubstance disorder. (Tr. 525). His Global Assessment of Functioning (GAF) was rated at 60. (Tr. 525). The Court notes that such a GAF suggests the existence of only "moderate" mental limitations according to the American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders (4th Ed.-Revised, 1994). The plaintiff was again hospitalized at Appalachian in July of 2003 where a polysubstance disorder and a substance-induced mood disorder were again diagnosed upon discharge. (Tr. 896). A GAF of 70 was noted at this time (Tr. 896), suggesting the existence of only "mild" psychological symptoms at the time of discharge. The numerous mental limitations of the ALJ's hypothetical question would appear essentially consistent with these

---

[1] As noted below, Public Law 104-121 provides that substance abuse is no longer a proper ground for Social Security Benefits.

7

treating sources. Even if these opinions were not considered compatible, the limitations would relate to polysubstance abuse. As a result of Public Law 104-21, drug and alcohol abuse may no longer be considered as a ground for Social Security disability claims. The Court notes that mental health-related hospitalizations in March of 2000 at the University of Kentucky Chandler Medical Center (Tr. 478-487) and at Baptist Regional Medical Center in May of 2001 (Tr. 488-492) also were the result of substance abuse.

The ALJ's hypothetical question would also appear essentially consistent with the opinions of Psychologists Reba Moore (Tr. 284) and Robert Eardley (Tr. 564-568), each an examining consultant. Psychologists Thompson Prout (Tr. 569) and Edward Stodola (Tr. 611), the non-examining medical reviewers, each opined that the claimant did not suffer from a "severe" mental impairment. To the extent that the opinions of Psychologists Ed Ross (Tr. 304-305) and Ann Demaree (Tr. 318-319) might be construed to suggest the existence of mental limitations not presented to the vocational expert, these are outweighed and offset by the aforementioned medical evidence. Therefore, substantial evidence supports this portion of the ALJ's decision.

McCorkle's only argument is that the information contained in the Dictionary of Occupational Titles (DOT) suggests that the jobs of machine operator and office helper, cited by the ALJ, would not be compatible with the restrictions contained in the ALJ's hypothetical question. The plaintiff asserts that the job of office helper would require extensive interaction with other co-workers and business people and, so, would not be consistent with the question's ban on public contact. The job of machine operator would be incompatible with the question's ban on fast-paced assembly line work as well as could endanger the claimant or other workers. The undersigned must reject

8

McCorkle's argument.

The undersigned notes that even if McCorkle's assertions were accepted, the jobs of inspector/checker and bench assembler would remain. This would still leave a significant number of other jobs. With regard to the position of the office helper, the plaintiff's cited activities would all involve co-workers or business colleagues and not require exposure to the general public as the question appeared to indicate. Furthermore, even if these contacts were found to run afoul of this particular restriction, the undersigned notes that no treating, examining or reviewing mental health source actually imposed such a severe limitation. The ALJ's adoption of this limitation appears gratuitous and, so, should not be the basis for a remand of the current action. With regard to the position of machine operator, the Court notes that the question of worker safety was extensively discussed by Rogers at the administrative hearing and the expert reported that these positions involved only watching production and pushing buttons and would not be the type of machinery for which it would be dangerous for a person who suffered seizures to be around. (Tr. 1141-1142). Furthermore, the witness was certainly aware of the limitation concerning fast-paced work and possibly would not agree with the claimant that the DOT suggests that this work is really fast-paced.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the ___8___ day of February, 2006.

*G. Wix Unthank*
G. WIX UNTHANK
SENIOR JUDGE

9